**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

LARRY WAYNE JONES
ADC #70147                                                                                          PLAINTIFF

V.                              No. 5:10CV00068 JMM-BD

DARRYL GOLDEN, *et al.*                                                                  DEFENDANTS

**RECOMMENDED DISPOSITION**

**I.    Procedure for Filing Objections:**

The following recommended disposition has been sent to United States District Judge James M. Moody. Any party may file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days of the date of the recommendation. A copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## II. Background:

Plaintiff Larry Wayne Jones, an inmate incarcerated in the Varner Super Max Unit of the Arkansas Department of Correction ("ADC"), filed this action pro se under 42 U.S.C. § 1983. (Docket entry #2) Mr. Jones claims that Defendants wrongfully denied him access to the publication titled "Angels of Death" without a legitimate penological objective, in violation of the First Amendment. Mr. Jones seeks both monetary and injunctive relief.

The Defendants have filed a motion for summary judgment (#50) arguing that Mr. Jones did not exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA") and that the ADC has a legitimate penological interest in restricting the types of publications that inmates may receive. In addition, the Defendants argue that they are entitled to both qualified and sovereign immunity.[1] Mr. Jones has responded to the Defendants' motion. (#65, #66, #67, and #68) Based on the evidence presented, the Defendants' motion (#50) should be GRANTED.

## III. Discussion:

### A. Standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine dispute as to any issue

---

[1] Because the Defendants are entitled to judgment as a matter of law on Plaintiff's constitutional claim, the Court will not address the Defendants' qualified or sovereign immunity arguments in this recommendation.

of material fact. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246 (1986). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005). If the opposing party fails to carry that burden, summary judgment should be granted. *Celotex,* 477 U.S. at 322. Pro se complaints must be construed liberally; even so, they still must allege "sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

  B. Exhaustion

  The PLRA requires that prisoners exhaust all "available" remedies before filing suit under 42 U.S.C. §1983. See 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 738, 121 S.Ct. 1819 (2001) (holding that available remedies "must be exhausted before a complaint under § 1983 may be entertained"). For purposes of § 1983, an "available remedy" is one that is "capable of use for the accomplishment of a purpose; immediately utilizable [and] accessible." *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001). It does not matter whether the prisoner subjectively believed that there was no point in pursuing his administrative remedies. *Lyon v. Vande Krol*, 305 F.3d 806, 808-09 (8th Cir. 2002); *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000), cert. denied 531 U.S. 1156 (2001).

If exhaustion is not complete by the time a lawsuit is filed, the Court must dismiss it. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003).

Prisoners may be excused from completing administrative procedures, but only when correctional officials have prevented prisoners from using the procedures or when the officials themselves have not complied with the administrative procedures. *Miller v. Norris*, *supra* at 740; *Foulk v. Charrier*, 262 F.3d 687, 697-98 (8th Cir. 2001).

Here, Defendants attach the affidavit of Tiffanye Compton to their motion for summary judgment. (#50-2) Ms. Compton testifies that Mr. Jones did not fully exhaust any grievances regarding the confiscation of the publication "Angels of Death" prior to filing this lawsuit in March 2010. (#50-2 at p.2) The Defendants also attach to their motion excerpts from Mr. Jones's deposition where he admits that he did not fully exhaust his grievances until after he filed this lawsuit. (#50-1 at p.5-6)

In his response to the motion for summary judgment, Mr. Jones argues that he fully exhausted administrative remedies available to him. Specifically, he claims that he was told that he did not need to use the prison grievance procedure to address the rejection of a publication if he had pursued his claim through the publication review procedure. (#73 at p.2) In addition, he states that "his attempts to utilize the Grievance Procedure [] were rebuffed by the warden's designee, the warden himself, and by the Defendant Larry D. May." (#73 at p.2)

Mr. Jones attaches to his response the Warden/Center Supervisor's Decision relating to Grievance #10-01324. (#68 at p.37) In that Decision, the Warden explains to Mr. Jones that decisions of the Unit Publication Review Committee are appealable only to the Central Office Publication Review Committee. Because the Central Office Publication Review Committee had affirmed the Unit decision, the "matter" was considered "moot." (#68 at p.37)

In addition, Mr. Jones attaches the Warden/Center Supervisor's Decision relating to grievance #VSM 10-00929, in which the Deputy Warden informed Plaintiff that if he disagreed with the decision of the Varner Publication Committee, he should appeal to the Central Office Publication Review Committee. Accordingly, the warden found "no merit in [Plaintiff's] grievance." (#68 at p.44)

Furthermore, Mr. Jones attaches to his response, a Warden/Center Supervisor's Decision received by Dwight Ford, a fellow VSM inmate, as well as Mr. Ford's affidavit. (#68 at pp. 9-11) In his affidavit, Mr. Ford testified that he filed a grievance seeking clarification regarding the conflicting procedures provided in the ADC grievance policy and the ADC publication policy. (#68 at pp.9-11) The Warden responded to Mr. Ford's grievance and stated that "there [was] no need for [him] to write another grievance"; rather, any appeal of the Warden should be to the Department of Correction Publication Review Committee. (#68 at p.12)

Although Mr. Jones did not receive responses to his grievances until after he filed this lawsuit, he filed a grievance regarding the events giving rise to this lawsuit on March 12, 2010, three days before the filing of his original complaint in this case. (#68 at p.43) Based upon the evidence Mr. Jones has presented to the Court, it was not necessary for him to pursue his administrative remedies regarding this issue. Rather, Plaintiff was specifically informed that he should pursue this matter with the Central Office Publication Review Committee. His failure to fully exhaust his administrative remedies under the ADC grievance procedure should not serve as a bar to his constitutional claim. Accordingly, the Defendants are not entitled to summary judgment on this basis.

    C.    Legitimate Penological Interest

The Defendants also argue that they are entitled to judgment as a matter of law because the ADC has a legitimate penological interest in restricting the types of publications that inmates can receive. This contention does have merit.

It is settled law that a prisoner's right to receive publications may be restricted based on "legitimate penological interests." *Thornburgh v. Abbott*, 490 U.S. 401, 412-14 (1989); *Dawson v. Scurr*, 986 F.2d 257, 260 (8th Cir. 1993). See also *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254 (1987). Prison officials have broad discretion in deciding to censor or restrict access to publications for legitimate penological reasons, including security needs. *Ivey v. Ashcroft*, 62 F.3d 1421, *2 (8th Cir. 1995) (unpub. per curiam) (concluding that censorship of specific material was "constitutionally valid"). See also

*Travis v. Norris*, 805 F.2d 806, 808-09 (8th Cir. 1986) (upholding censorship of publication which advocated expression of "hostil[ity] to prison officials and authority in general," as well as abuse of judicial process).

ADC Administrative Directive 07-01 states that publications "may be rejected if found to be detrimental to the security, discipline or good order of the institution or if they propose, condone, or provide information likely to facilitate criminal activity." (#50-9 at p.1) The publication at issue in this lawsuit was confiscated because it contained gang signs.[2] (#50-10 at p.1) Defendant Golden specifically explained to Mr. Jones that "[i]f a publication has a gang sign within its pages or on the cover, it is against the publication policy and is denied." (#50-3 at p.4) These kinds of signs have been identified by the ADC as security threat group signs or "STG" signs. (#68 at p.68) Because of the significant penological interest of institutional security and the ADC's broad discretion in monitoring material received by inmates, Mr. Jones's first amendment claim fails. See *Proctor v. Smallwood*, 2009 WL 7925559, *2 (E.D. Ark. March 23, 2009) (concluding that prisoner's "first amendment rights [were] not violated by the prison policy prohibiting magazines containing gang signs"); see also *Harbin-Bey v. Rutter*, 420 F.3d 571 (6th Cir. 2005) (regulation prohibiting prisoners from receiving mail depicting gang

---

[2] Plaintiff does not appear to dispute the fact that the publication at issue depicted gang symbols commonly used by the Hell's Angels on its cover.

7

symbols or signs was constitutionally valid and district court properly dismissed inmate's first amendment claim).[3]

In addition, although Mr. Jones provided the Court with examples of both publications and movies that were not confiscated or banned by the ADC, that does not create a genuine dispute of material fact in this case. Here, a specific publication was confiscated because it featured gang signs on the rear cover. (#50-11 at p.1) Although similar material may be allowed into the ADC, the Court is not in the position to monitor the publications received by ADC inmates or the type of movies ADC inmates are permitted to watch. Mr. Jones is reminded that by emphasizing the violent nature of materials that have not been banned, he may be subjecting those materials to scrutiny and censorship in the future.

**IV.    Conclusion:**

The Court recommends that the Defendants' motion for summary judgment (#50) be GRANTED and that the Plaintiff's claims be DISMISSED with prejudice.

---

[3] In evaluating the ADC directive at issue in this case using the factors articulated in *Turner*, the directive appears constitutionally sound. First, the directive is reasonably related to a legitimate penological interest. Second, the directive does not prohibit inmates from receiving all publications. Moreover, allowing inmates to have access to publications containing gang signs could have an adverse impact on both guards and staff, and there appears to be no ready alternative to regulate this kind of material.

DATED this 9th day of March, 2011.

_____
UNITED STATES MAGISTRATE JUDGE